872 P.2d 204

**SMP II LIMITED PARTNERSHIP**

v.

**ARIZONA DEPARTMENT OF REVENUE; Maricopa County.**

**No. TX 92–00619.**

Tax Court of Arizona.

March 30, 1994.

Donald P. Roelke and Paul J. Mooney, Phoenix, for plaintiff.

Helm & Kyle by John D. Helm, Tempe, for defendant.

## OPINION

SCHAFER, Judge.

The issue in this case is the valuation of the Sheraton San Marcos Resort.

The San Marcos is a 295–room full-service resort hotel, including a golf course, located

in Chandler, Arizona. It opened in 1913 with 35 guest rooms and operated until 1979. It re-opened in 1987 after extensive renovations and expansion. Even with the expansion and renovations the hotel continues to perform below area averages for average daily room rates and occupancy rates.

For tax year 1992, Maricopa County set the full cash value of the San Marcos at $15,649,535. SMP II Limited Partnership (SMP II), the owner of the hotel, filed an administrative appeal and the State Board of Tax Appeals reduced the full cash value to $11,110,457. It is that valuation which has been appealed.[1]

SMP II contends that the full cash value of $11 + million is excessive and should be lowered to $6,780,000. The County concedes that $11 + million is excessive, but asserts that the value should be lowered only to $8.4 million.[2]

## ANALYSIS

■ When a valuation is appealed to the Tax Court, there is a presumption that the government's valuation is correct and lawful. A.R.S. § 42–178(B). The presumption is one of fact and may be overcome by competent evidence. *Department of Property Valuation v. Trico Electric Cooperative, Inc.*, 113 Ariz. 68, 70, 546 P.2d 804, 806 (1976). To overcome the presumption, a taxpayer must present sufficient " 'evidence contradicting the presumption ... from which the trial court can determine the full cash value of the property in question.' " *Department of Property Valuation v. Trico Electric Cooperative, Inc.*, *supra*, 113 Ariz. at 69 and 70, 546 P.2d at 805 and 806 (quoting *Graham County v. Graham County Electric Coop., Inc.*, 109 Ariz. 468, 512 P.2d 11 (1973)).

■ The Tax Court may make its own determination of full cash value only after two conditions are met. First, evidence must be presented to rebut the presumption. A.R.S. § 42–178(C); *Department of Property Valuation v. Trico Electric Cooperative, Inc.*, *supra*, 113 Ariz. at 70, 546 P.2d at 806. And second, the Court must make a preliminary finding that the valuation is excessive or insufficient. A.R.S. § 42–178(C).

■ Here, the parties are in agreement that the County's original valuation of $11,-110,457 is excessive and should be reduced but they cannot agree on what the reduction should be. Therefore, it is up to the Court to determine the full cash value.

SMP II presented testimony and evidence to establish a full cash value of $6,780,000 while the County presented evidence showing $8,400,000[3]. The Court finds the full cash value to be $6,780,000.

To support its position that the value should be lowered to $8.4 million, the County presented expert testimony and an appraisal of the property. The appraisal was prepared by Lawrence Bloom, a certified MAI appraiser and consultant. He inspected the property and reviewed the hotel's financial and operating statements. He derived his final valuation of approximately $8,460,625 by utilizing the income approach to value with a direct capitalization rate of 9.5%.

There are several flaws in Mr. Bloom's analysis. Those flaws include Mr. Bloom's use of a 366–day year in his calculations rather than the appropriate 365–day year, his failure to adjust certain items of expense and income attributable to those golf course operations of the resort not the subject of this appeal, his overadjustment of some ex-

---

1. Parcel numbers 303–08–002 through 303–08–012, 303–08–113A, 303–08–014, 303–08–090A through 303–08–105, 303–08–106A and 303–08–005A are included in this appeal. The valuation of the golf course property and associated parcels are not being appealed.

2. The County derived its income stream for 1992 from an estimated occupancy rate of 62% and an estimated average daily room rate of $72.00—estimates higher than the Sheraton San Marcos has ever actually achieved. In contrast, SMP II derived its income stream by using 1992 esti-

mates of a 60% occupancy rate and an average daily room rate of $70.00.

3. The County stipulated prior to trial that it would not request a valuation higher than $8,400,000. In its post trial memoranda the County agrees to stand by its stipulation while suggesting that the Court would be justified in increasing the valuation to $8,790,000 due to the Court's granting of Taxpayer's motion to dismiss parcel 107A from the appeal. The Court will hold the County to its stipulation.

pense items to inaccurately reflect the estimated operating expenses, and his failure to make other necessary adjustments to the income, expenses and the capitalization rate used in his approach to valuation. These flaws resulted in an inflated value.

SMP II also presented an appraisal of the property to support its reduction in value to $6,780,000. Its appraisal was done by Tom Turner, also a certified MAI appraiser and consultant. Mr. Turner used each of the three commonly accepted appraisal methods to arrive at the $6+ million value, but, like Mr. Bloom, he relied most heavily on the income approach. He used a discounted cash flow analysis rather than the direct capitalization method used by Mr. Bloom. In arriving at his valuation under the income approach, he did an analysis of the hotel's historical operating data and, using that as a starting point, prepared a forecast of occupancy and daily room rates, which reflect a build-up over the four year period from 1992 through 1996. This build-up approach was necessary in order to reach stabilized occupancy and daily room rates. He then made adjustments to the hotel's expenses and revenues to reflect stabilized operations and present a realistic operating picture. The end result was a valuation of $6,780,000.

Mr. Turner's approach took into consideration the San Marcos's actual operating expenses and revenue while forecasting realistic increases or decreases in certain expense and revenue items. He also made realistic adjustments to the hotel's expenses and revenue to reflect where *this* hotel, with its unique circumstances, should be performing when stabilized as compared to national averages of similar hotels. In contrast, Mr. Bloom's analysis and adjustments did not accurately reflect this hotel's actual expense history and anticipated needs, nor did it fully account for the hotel's location and other shortcomings.

This Court finds that as of January 1, 1992, the full cash value of the Sheraton San Marcos property was $6,780,000.

### CONCLUSION

**IT IS ORDERED** that the full cash value for 1992 of the Sheraton San Marcos proper-

ty be lowered to $6,780,000 and the tax rolls be corrected accordingly. The County is **ORDERED** to issue a refund of the excess property taxes paid which results from the difference in the initial property valuation and this corrected valuation, plus interest. Finally, **IT IS ORDERED** that the County pay SMP II's costs associated with this appeal.

This opinion is not a final, appealable judgment and other orders will follow. See *Devenir Associates v. City of Phoenix*, 169 Ariz. 500, 821 P.2d 161 (1991).